THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv199

| | |
|---|---|
| SHERRY L. HOLTSCLAW, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the parties' Motions for Summary Judgment [Docs. 11 & 15].

**I.     PROCEDURAL HISTORY**

The Plaintiff Sherry Holtsclaw filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income disability benefits on September 14, 2007, alleging that she became disabled as of October 1, 2006. [Transcript ("T.") 85, 88]. Her application was denied initially and on reconsideration. [T. 33-35, 36-39, 40-44]. A hearing was held before Administrative Law Judge ("ALJ") Helen O. Evans on August 7, 2009. [T. 575-623]. On January 22, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 15-28]. The Appeals Council accepted additional

evidence but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 5-8]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets

or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

On January 22, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 15-28]. At the outset, the ALJ noted that the Plaintiff previously had filed applications for a period of disability and disability insurance benefits in November and December 2003, respectively, which applications were denied initially and on reconsideration. Thereafter, the Plaintiff requested a hearing before the ALJ. The ALJ denied Plaintiff's claim on September 9, 2006, finding that the Plaintiff retained the residual functional capacity for light level work with a sit/stand option every 30-45 minutes, only occasional

4

stooping, bending, crawling, crouching or twisting, and avoidance of any exposure to hazards and heights. Plaintiff was further limited to performing only simple, routine tasks with no public contact. It was determined that Plaintiff had a moderate limitation in maintaining concentration for long periods of time and could respond appropriately to supervision and co-workers. Citing Social Security Acquiescence Ruling (AR) 00-1(4) and the Fourth Circuit's decision in <u>Albright v. Commissioner of Social Security</u>, 174 F.3d 473 (4th Cir. 1999), the ALJ indicated that these prior findings were relevant in assessing Plaintiff's present disability claim:

> Although the claimant has submitted new and material evidence since the last decision and has been found to have additional diagnoses of scoliosis and low intellectual functioning, the evidence pertaining to the current period of time [October 1, 2006 through March 31, 2008] still show the [Plaintiff] capable of performing light level work with a sit/stand option in 30-45 minute[ ] increments as well as postural, environmental and mental limitations that take into account the new evidence submitted since the last decision as well as her new, additional impairments as noted herein. The evidence in its entirety does not reflect that the [Plaintiff's] physical impairments have worsened significantly or that her mental impairments are severe enough or caused such severe functional limitations to the extent of precluding the performance of a significant range of light work for the reasons stated herein . . . .

[T. 16].

Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was March 31, 2008 and that she had not engaged in any substantial gainful activity since October 1, 2006. [T. 18-19]. The ALJ then determined the following severe impairments: (1) chronic back pain secondary to degenerative disc disease of the lumbar spine with paramedian disc bulging at L5-S1; (2) fibromyalgia; (3) scoliosis; (4) affective mood disorder and (5) low intellectual functioning. [T. 19]. The ALJ concluded that her impairments did not meet or equal a listing. [T. 19]. She then determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work, specifically limited to: lifting or carrying twenty pounds occasionally and ten pounds frequently; sitting, standing or walking six hours in an eight-hour workday but with a sit/stand option in 30-45 minute increments; only occasionally climbing stairs, stooping, bending, crouching, squatting or crawling; never climbing ropes or ladders; avoiding ordinary workplace hazards, (e.g., moving machinery, unprotected heights, etc.). Due to her mental limitations, the Plaintiff was further limited to jobs that did not involve her working closely with the general public or in close coordination with others and that did not put her in a position of responsibility for others' safety or performance. She was further limited to jobs involving stable/frequent

changes in work setting or assignment and to low-stress jobs without numerical production goals. [T. 21].

The ALJ went on to find that Plaintiff was unable to perform her past relevant work as a home health attendant. [T. 26]. She then used the Medical-Vocational Guidelines (Grids) as a framework to conclude that there were jobs in significant numbers in the national economy that Plaintiff could perform. [T. 27]. Accordingly, she concluded that the Plaintiff was not disabled from October 1, 2006 through the date of her decision. [T. 28].

## VI. DISCUSSION

Plaintiff asserts three principal assignments of error. First, she argues that the ALJ erred in concluding that her conditions do not meet the presumptively disabling standards of Listing 12.05B or 12.05C regarding mental retardation. Second, she contends that the ALJ wrongfully applied AR 00-1(4) in considering the findings from the earlier adverse decision denying her benefits in evaluating her present disability claim. Third, the Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treating physician and treating rheumatologist. Because the Court finds that the ALJ erred in concluding that Plaintiff did not meet the presumptively disabling standards of Listing 12.05, this case will be remanded for further proceedings.

Listing 12.05 provides, in relevant part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. Accordingly, Listing 12.05 sets forth a two-part test for determining mental retardation. First, the claimant must satisfy the diagnostic description by demonstrating significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; and second, the claimant must meet the severity requirements of one of the four following sub-paragraphs. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00A. The burden is on the Plaintiff to prove that her mental impairment met or medically

8

equaled Listing 12.05. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step [of the sequential evaluation process], the burden of production and proof is on the claimant.").

In the present case, the ALJ found that the Plaintiff has low intellectual functioning, with Wechsler Adult Intelligence Scale-III testing showing a valid full scale IQ score of 59.[1] [T. 20]. Despite the validity of this IQ score, the ALJ nevertheless concluded that the Plaintiff did not satisfy Listing 12.05B because she failed to demonstrate the requisite deficits in adaptive functioning necessary to satisfy the diagnostic description of §12.05. Specifically, the ALJ found that Plaintiff

> show[ed] no problems with communication, self-care or safety and only moderate limitations with social/interpersonal skills, use of community resources, self-direction, functional academic skills, [and] work or leisure abilities. She was able to understand the spoken word and give attention and she demonstrated relevant, coherent speech. She was able to perform lower end semi-skilled jobs in the past without significant problems doing so because of her low intellect and appears capable of functioning quite adequately and independently despite her mental limitations. She was able to complete CNA training and it was felt her low intellect had been a lifelong condition.

---

[1] Plaintiff also achieved a verbal IQ score of 63 and a performance IQ score of 60. [T. 530].

9

[Id.]. The ALJ went on to find that Plaintiff also failed to satisfy Listing 12.05C because in addition to the lack of deficits in adaptive functioning, Plaintiff did "not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." [T. 21].

The Plaintiff contends that she satisfied both Listing 12.05B and 12.05C in this case. While the Defendant concedes that the Plaintiff satisfies both the paragraph B and paragraph C criteria, the Defendant contends that the ALJ properly found that Plaintiff did not have the requisite deficits in adaptive functioning necessary to meet the diagnostic description of Listing 12.05. Having carefully reviewed the record, however, the Court concludes that the ALJ's determination in this regard in not supported by substantial evidence.

Contrary to the ALJ's findings, there is abundant evidence in the record to suggest the manifestation of deficits in adaptive functioning before the age of 22. Although Plaintiff stated in her disability application that she could read and understand English [T. 111], she admitted at the administrative hearing that she could not understand the questionnaires and notices she had received from the Social Security Administration during the claim process and that she needed her mother's help to explain them [T. 586]. The Plaintiff

10

testified that she was in special education classes throughout school, and that she had a learning disability which made it hard for her to learn. [T. 585, 586]. Plaintiff's school records, while not entirely legible, demonstrate a history of poor academic performance resulting in Plaintiff dropping out in the eleventh grade. [T. 185-87]. For example, her only academic subjects in 9th grade were developmental math, for which she obtained grades of 66 and 70, and English, where she received two 70s. Although the subjects cannot be discerned, on achievement testing in 8th grade she appears to have scored in the 5th, 15th, 7th and 11th percentile overall, while in 9th grade, she scored in the 6th, 57th, 17th, 7th and 10th overall. [T. 187]. Because the Avery County school system had destroyed all special education records from the time when Plaintiff was a student there, Plaintiff's counsel obtained a letter from Cynthia Henderson, a special education teacher who remembered teaching the Plaintiff. [T. 188]. Ms. Henderson confirmed that she remembered Plaintiff "very well" and that she did indeed receive services in the "Specific Learning Disabled" classroom because of her difficulty with reading vocabulary and comprehension, written expression, and math computation and application. [T. 189]. Plaintiff's extremely low IQ scores, coupled with her lack of literacy and history of special education, are sufficient

11

to establish the requisite manifestation of deficits in adaptive functioning before the age of 22.  See Luckey v. U.S. Dep't of Health and Human Servs., 890 F.2d 666, 668-69 (4th Cir. 1989) (evidence of low IQ along with fact that claimant could barely read or write was "'a clear manifestation' of mental retardation occurring before age twenty-two"); Turner v. Bowen, 856 F.2d 695, 699 (4th Cir. 1988) (evidence of illiteracy at age sixteen sufficient to demonstrate manifestation of adaptive functioning deficits).

While the ALJ cited the Plaintiff's employment history as indicating a lack of deficits in adaptive functioning, the Plaintiff's earning record reveals little substantial work during her lifetime, with total earnings of only $78,434.76 over the course of 18 years, with earnings exceeding $10,000 in only five years, from 1997 through 2001.  [T. 95-96, 106-09].  The Plaintiff took a CNA training course, but that training was only two weeks in duration [T. 607] and appears to have been "hands on" in nature [T. 531].  Significantly, for most of the time that Plaintiff was employed as a CNA, she was taking care of her own grandmother.  [T. 107-08, 221-22, 587].  Even doing that work, she needed the help of a relative.  [T. 588].  Plaintiff testified that she tried to continue to work as a CNA after her grandmother died, but she only lasted three to four

12

months. [T. 589]. Contrary to the ALJ's assertion, Plaintiff's training and work history does not offer substantial evidence of adaptive functioning.

The ALJ found that Plaintiff had only "moderate limitations" in other areas, such as social functioning. [T. 19]. This finding, however, also lacks the support of substantial evidence. The Plaintiff testified that she had never lived independently from her family, even when she was married. She described her marriage as abusive, and she stated that she had few friends. [T. 590-91, 598, 609-10, 612]. In addition to Plaintiff's own testimony, evidence of Plaintiff's marked restriction in social functioning is evident in the consultative psychological evaluation performed by J.R. Hap Cox, Ph.D. in December 2007. At that time, a mental status evaluation was positive for only fair eye contact, withdrawal, a "quite depressed and somewhat anxious" mood, and blunted affect. [T. 223]. Dr. Cox noted that she displayed little energy, and acknowledged no motivation, no enjoyment and no interest in sexual matters. She described poor sleep, three hours without medication and only six to seven with, and a variable appetite with a thirty-three pound recent weight loss. [Id.]. She admitted to recent suicidal ideation. [Id.]. Dr. Cox described her recent memory as poor "likely due to depression, anxiety and limited intellect." [Id.]. He concluded that her intellectual functioning was

13

in the "borderline range and perhaps lower" and that her insight was poor. [T. 224]. His psychological diagnoses were bipolar disorder, mixed, severe, panic disorder with agoraphobia, and obsessive-compulsive disorder, and he assessed a GAF of just 25[2], opining that it had been no higher in the prior year. [Id.].

Dr. Cox found very significant impairment in Plaintiff's functional abilities, stating that her attention to tasks was poor and her task persistence was virtually absent due to her depressive lack of motivation and the interference of compulsive behaviors. [Id.]. He described her social functioning as highly restricted and her agoraphobia as severe. He ultimately concluded that the "workday stress of performing to instructions, persisting in a task, and even interacting with coworkers or a supervisor would quickly become overwhelming and intensify her emotional debilitation," and he observed that "[h]er low intellectual functioning appears to be lifelong and not just a suppression of functioning caused by depression." [Id.]. Dr. Cox's evaluation

---

[2]The "GAF," or "Global Assessment of Functioning" from the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") explains that a score of 21 to 30 on its 100 point indicates that a person's "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."

14

certainly establishes "marked" restriction in Plaintiff's social functioning and her ability to maintain concentration, persistence, or pace.

The ALJ did not discuss Dr. Cox's evaluation in any detail, instead choosing to cite only some of his findings and observations in support of her conclusion that the Plaintiff has only moderate difficulties in social functioning. [See T. 19]. The ALJ failed to offer any explanation for her apparent rejection of Dr. Cox's findings regarding Plaintiff's more marked restrictions. To do so was error. In light of the overwhelming evidence demonstrating the manifestation of adaptive functioning deficits prior to the age of 22, and the Plaintiff's valid IQ score of 59, the Court concludes that the ALJ's finding that Plaintiff did not meet the criteria of Listing 12.05B is a finding that is not supported by substantial evidence.

Likewise, the ALJ's finding that Plaintiff did not meet the paragraph C criteria of Listing 12.05 lacks evidentiary support. Plaintiff's IQ testing showed performance and verbal IQs in the 60-70 range. As for the "additional, significant impairment," the ALJ herself concluded that Plaintiff suffers from "severe impairments" of chronic back pain secondary to degenerative disc disease of the lumbar spine with paramedian disc bulging at L5-S1, fibromyalgia, scoliosis, and affective mood disorder. [T. 19]. She also found

15

that Plaintiff's physical limitations limited her to only light level exertion, and that her non-cognitive impairments prevented her return to any past relevant work. [T. 16, 26]. In light of these findings, the Court concludes that the Plaintiff also clearly met the requirements of Listing 12.05C.

In denying the Plaintiff benefits, the ALJ found that the Plaintiff retained the residual functional capacity to perform a range of light work as found in her prior decision. [T. 16]. Significantly, however, the Plaintiff did not assert mental retardation as a disabling impairment in the prior proceeding, and thus the ALJ made no determination as to whether the Plaintiff met the criteria for Listing 12.05. As the ALJ's prior decision did not address the Plaintiff's low intellectual functioning, that decision does not supply substantial evidence to support the ALJ's denial of her present disability claim.

Having determined that a remand is appropriate, the Court must consider whether this matter should be remanded for further hearing or for the immediate award of benefits. The statute governing review in Social Security cases authorizes the Court to reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). As the Fourth Circuit has explained, this statute gives the Court authority to remand for the immediate award of benefits "where the record does not contain

substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974); accord Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 865 (6th Cir. 2011) ("Benefits may be awarded only where the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming."). In the present case, the Court concludes that the proof of disability is strong and that the opposing evidence cited by the ALJ lacks substance. As such, a remand for a rehearing would appear to serve no purpose. Accordingly, the Court concludes that a remand for the immediate award of benefits is appropriate.[3]

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 15] is **DENIED**.

---

[3] In light of the Court's ruling, the other assignments of error raised by the Plaintiff need not be addressed.

17

Case 1:10-cv-00199-MR   Document 17   Filed 12/30/11   Page 17 of 18

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** to the Commissioner for the immediate award of benefits.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 30, 2011

Martin Reidinger
United States District Judge